IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | CASE NUMBER: CV208-149 |
| ) | |
| DR. BEN JENKINS and ) | |
| THE CHURCH OF VERITY, INC., ) | |
|     Defendants ) | |
| ) | |

**DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

COME NOW, DR. BEN JENKINS and THE CHURCH OF VERITY, INC., Defendants, by and through their counsel of record, and file this Defendants' Opposition to Plaintiff's Motion for Summary Judgment as follows:

**Introduction**

Defendants oppose Plaintiff's Motion for Summary Judgment as it has not and cannot meet the burden required for the grant of summary judgment. It fails to correctly identify the interests of the Defendants in the subject property and the rights to those interests accorded by the statutory provisions of Georgia law and the instruments in question.

This litigation is a civil action alleging trespass and nuisance for construction activities upon certain real property in which the United States has a remainder interest. This litigation also concerns Defendants' counterclaim for damages for trespass by the Plaintiff's interference with the Defendants' property interests.

Preliminary to the determination as to which parties' property rights have been interfered with and damaged is a determination as to the interests each party possesses in the realty by

1

virtue of the conveying instruments.

As the Plaintiff correctly states in its motion for summary judgment, part of the bargain for the Carnegie heirs to sell their property to the National Park Foundation was their ability to retain an estate for years. At the time of the conveyance in October 8, 1970, which created the original estate for years, the Schwartz property was owned by the National Park Foundation, a corporation organized by an Act of Congress. The Cumberland Island National Seashore, which was subsequently created in 1972, later obtained the remainder interest subject to the estate for years from the National Park Foundation and can only claim those specific rights that the remainder interest retained after the estate for years was conveyed. The only restrictions relevant to issues in this litigation contained in the creating instrument which limit the estate for forty years is to restrict the estate holder to noncommercial residential purposes. A restriction on cutting timber and rights to docks and access also exist, but are not at issue in this litigation. Also a two-month reversion interest to Schwartz obviates the need for consideration of the right of first refusal that exists.

A definition of that term was supplied in the instrument by the sentence: "The term "commercial residential purposes" shall be construed for the purposes of this agreement to permit a private single-family residence, with necessary support facilities; to be leased for not less than week to week tenancies." A further contingency was the requirement: "This grant of an Estate for Years is contingent upon the Grantee commencing and completing construction of a single-family residential dwelling within ten (10) years from the date of this conveyance. The right of construction is limited to a single-family residence." Except for this limitation, if a single residence had been completed within ten years and reversion defeated, the holder of the

2

estate for years has all the property rights of a fee simple owner.

The instrument contained no requirement for preapproval and/or submission of plans for any structures, improvements, additions or remodeling.  There were no express limitations as to size of  structures, improvements, additions or remodeling.  Nor was there mention of limitations or prohibitions regarding septic tanks, wells, or irrigations systems.  Necessary support facilities were also expressly permitted without that term being defined.

Subsequent conveyances of the property, such as that of January 1, 1978 from Schwartz to IRAKLA, repeated the requirements for construction within ten years, recited that the estate for years specifically allowed the "leasing of a private single-family residence with necessary support facilities for not less than week to week tenancies", and stated specifically "Landlord does hereby demise, lease, rent and let to Tenant for the term of this agreement, *any and all rights* Landlord has in and to the Property, for the use hereinafter set forth."  (Emphasis added.)

Additional provisions provided that:  the tenant shall have the right to contest the validity and applicability of any such laws, ordinances and regulations; shifted the requirement to construct any dwelling and all costs associated with it to the grantee; required the grantee to bear any costs of litigation concerning liens or judgments that may relate to any construction efforts; provided that the acquisition of fire or damage insurance coverage strictly rests with the grantee; required a minimum amount of $100,000 of liability coverage for grantor and grantee; and required payment of all taxes and assessments by the grantee.  Provisions dealt with the respective interests in the event of eminent domain, which realized a value of the interest of the grantee with the formula being based on the ratio of time that remains under the agreement for payment of any proceeds to the estate for years holder.  The provisions specifically recognized

that Georgia law would control interpretation, provided for severability of the parts, and contained a conflicting provision that said only a usufruct is being granted and that no estate is passed.

Defendants contend that an initial determination needs to be made between the conflicting provisions cited above, i.e., that of a usufruct or that of an estate for years and the effect that Georgia law has as to these contradictory provisions in the agreement.

**Defendants' Statement of Material Facts as to**

**Which There Exists a Genuine Issue to be Tried**

1.

Defendants dispute Plaintiff's Statement of Uncontested Facts to the extent that they attempt to suggest that the subsequently created National Park and its subsequent regulations could have in anyway limited or imposed requirements not specifically contained in the original instrument creating the estate for years.

While Defendants agree that the subsequent instrument contained the usufruct clause, the characterization by the Plaintiff fails to include the numerous pertinent clauses that grant interest inconsistent with a party having only a usufruct.

2.

Defendants dispute Plaintiff's footnote 10 that the agreement expressly gave a usufruct. Plaintiff fails to recognize the contradictory terms of the agreement including the provision that "Landlord does hereby demise, lease, rent and let to Tenant for the term of this agreement, *any and all rights* Landlord has in and to the Property, for the use hereinafter set forth." (Emphasis added.)

4

3.

Defendants dispute Plaintiff's characterization of the agreement between Defendants and the Shepherd Center in that the addition created two separate residences.  In fact, the plans clearly refer to the new construction as a "guest wing addition" and the roof line and walkway connects it to the existing structure.  While the construction has not been completed due to the Park Service's cease construction letter, portions of the connecting structure are in place and even the original plans show the connection regardless of the degree of completion at the time of the work stoppage.  Nor is there any indication of any other person intending to establish a residence on the property.

4.

Defendants dispute Plaintiff's statement that Defendant Jenkins belatedly requested permission to construct the addition. None of the instruments creating the interest at issue contain any requirement for preapproval for construction, remodeling, or additions.  Nor do any of the instruments contain any reference to compliance with existing or later imposed Park Service regulations after transfer of the remainder interest to the Cumberland Island Seashore. Had these matters been contemplated by the parties, they would have been included in the agreement.  Throughout these proceedings, Plaintiff has failed to produce evidence that reflects that Defendants had a duty to obtain approval from the National Park Service for the addition or any provision of law that compels a holder of an estate for years to comply with subsequently imposed requirements formulated by a transfer of a remainder interest.  Defendant Jenkins did, however, request permission in writing to build the addition after being instructed to do so by Park Service employees.  (Document 5-10)

Other Cumberland Island tenants with similar language in the instruments creating their estates have constructed additions, some with and some without notice to the Park Service of the construction. In instances where retained rights holders made requests for additional construction, these requests have been approved by the person who was the Park Superintendent at the time, including Arthur Frederick, who is currently the Deputy Regional Director of the Southeast Regional Park Service. (Hearing Transcript 11/25/08, Cross Examination of Arthur Frederick)

5.

Defendants dispute Plaintiff's statement that unbeknownst to the National Park Service, Defendants entered into an agreement with the Shepherd Center. Numerous discussions occurred between representatives of the Shepherd Center, Park personnel and the personnel from the Park Service's regional office during the construction activities in 2007. The Park Service was fully aware of which parties had taken what actions in connection with construction, stoppage and recommencing of the construction. Doctor Jenkins openly discussed construction activities and the Shepherd Center with Park employees.

Jenkins deposition, page 33:

Q. Okay, so if people from the National Park Service say that they discovered the construction when it was already started then that would be incorrect?
A. They're lying like hell.


Jenkins' deposition, page 36-37:

Q. - who from the National Park Service did you tell your plans to, prior to breaking ground?
A. Well, it's hard to remember exactly every individual because I told so many. I

6

>told Julie Meeks and I told Brumbelow, of course, and all the Park Rangers and everything, told everybody that wanted to know any damn thing about it. We, nothing was hidden. It was all done above-board and outside. And anybody could come and look at it anytime they wanted to, still can.

Despite the government's contention that they had no knowledge that the Shepherd Center had reconveyed their interest to the Defendants, the government did not direct the cease construction letter dated August 2, 2007 (Document 5-16) to the Shepherd Center, or name the Shepherd Center as a Defendant in the criminal action filed June 30, 2008 (Document 5-22), or in the current civil action. (Document 1).

6.

Defendants dispute Plaintiff's conclusion that the pertinent conveyances limit construction to just one building. The term "single-family residence" is not defined in the instrument in that manner nor is there an express limitation to just one building or what design consideration such as covered breezeways or hallways determine whether a structure is singular or not. Further, the instrument has no prohibitions concerning size, remodeling, additions, rebuilding or number of structures. As Plaintiff's own expert has opined, the addition in question is similar to other recognized and accepted single family residential structures, whether attached or detached, such as a guest cottage or mother-in-law's suite. He stated that there are many factors involved in determining what would be permissible in a single family residence:

Smith deposition, page 17-20:

>Q. And what facts would be the relevant factors in some fact-finder making the decision?
>A. If the instrument doesn't contain its own definition of single-family use, it would be a determination as to what homeowners who are similarly

situated normally do with their properties."
Q. And what is the circumstances in the present matter concerning that? Does the definition complete the single-family residence or not?
A. In the instruments that we're looking at, the primary instrument, the Estate for Years deed, uses the term single-family residence without defining it explicitly.
Q. Okay. So that's why these other factors would come into the determination?
A. Correct.
Q. And these are – would be incident specific or case specific sort of factors?
A. Yes.
Q. Such as whether or not compensation is received? I think we indicated that would be a factor.
A. Yes.
Q. Length of stay, would that be a factor?
A. Yes.
Q. Relationship, prior relationship, if any, to the person?
A. Yes.
Q. Okay. I'm sure there's – could you give me some others that would be involved in determining whether or not the single-family residence requirements are met or unmet?
A. Number of persons would be one. Whether the person or persons become members of the family's household in any sense. In addition to boarding, there would be another one.
Q. How about the language of the instruments that essentially talks about the ability to lease for periods not less than a certain period of time; does that affect the definition at all of single-family residence contained in these instruments?
A. I think it does not.
Q. So had it not had that specific language about being able to re-lease, that's something that the person who has the ownership interest of the estate could have done anyway without violating the single-family residence requirements?
A. Correct.
Q. So renting does not change – renting in and of itself doesn't change – renting the premises in and of itself doesn't change the character?
A. Correct.
Q. The – who it's rented to, does that change it?
A. No.
Q. Although that may be a factor along with all these others which you have named and then several that I've included in prior questions?
A. Right.
Q. Okay. So it's not some clear-cut, concise, well-defined definition of

8

the limitations contained in the instruments themselves?
A.  You're asking about the all-rental provision or the single-family provision?
Q.  The single-family provision.
A.  Correct.  The parties did not define the term.  They refer to it several times as a limitation all without attempting to give an explicit definition of their own."

Smith deposition, page 21:

Q.  Can a residence with what's commonly referred to as a guest cottage in accordance with Georgia law, be considered a single-family residence?
A.  Yes.
Q.  Does that have to be physically attached for that to be true, or can it be physically separate?
A.  You're asking as a general matter under Georgia law or you're asking in the context of this Estate for Years deed?
Q.  Well, let's start with as a general matter of Georgia law.
A.  I think that's true.  A guest cottage, depending upon how in fact it's used by the family, could conform to a single-family use restriction, although it could violate a single-family use restriction, again depending upon of the use in fact to which it's put.
Q.  Okay.  So if Mr. Crowder were to have his residence and a detached mother-in-law suite garage apartment facility, separate building, but lived in an area where he's restricted to single-family residence, it may be permissible; is that correct?
A.  It may be permissible, again, depending upon it's actual use."

7.

Defendants agree that the Estate for Years provides for "noncommercial residential purposes"; however, throughout these proceedings Plaintiff has failed to cite evidence that a noncommercial use has or would occur if construction is completed.  No evidence has been produced that the addition could only be reasonably used in a commercial manner by nature of its design and construction.  Further, there is no evidence that Defendants have advertised the addition for any commercial purpose nor  received any rental proceeds.

9

8.

Defendants dispute Plaintiff's statement that "There also is a likelihood that cultural and natural resources of the Seashore have been damaged." The site of construction of the addition and septic system has been visited by numerous rangers and other park employees who have received training in environmental and cultural resource matters including: John Fry, Chief of Resources Management of Cumberland Island National Seashore; Jeremy Bret Nickels, Facility Program Manager, Dennis Parsons, Head Ranger; and Jerre Brumbelow, prior Superintendent. No Park Service employees identified any specific damage that would occur if construction was permitted. John Fry testified that Defendants' property does not contain archeological sites unlike other sites where the Park Service has permitted construction on property that contained historical structures and archeological sites. (John Fry deposition, page 11-13, 18)

Plaintiff's argument operates under an assumption that subsequently imposed Park regulations supercede the property rights conveyed before the Cumberland Island National Seashore came into existence. The Park Foundation may have conveyed its interests, but it could not convey remainder interests greater than it retained.

9.

Defendant Jenkins has performed additional work on the addition.

**Statement of Facts**

Defendants contend that the instruments by which they have an interest in the property permit the construction of additional structures as long as the addition is for "noncommercial residential purposes". While the government has a remainder interest in the property, the actions of Defendants were within the property rights of

10

an owner of an estate for years and did not injure the government or constitute a trespass or nuisance.

On January 6, 2006, Dr. Jenkins sought to convey a portion of his interest in his residence on Cumberland Island to the Shepherd Center reserving the right to continue residing there. (Documents 5-7, 5-8, 5-9)  The Shepherd Center is a nonprofit rehabilitative hospital specializing in medical treatment, research, and rehabilitation for people with spinal cord and brain injuries.  Dr. Jenkins and the Shepherd Center sought to construct an attached addition to the residence that would allow disabled people to have overnight visits to the Island.  He freely expressed his intentions during on numerous conversations with Park personnel, including Julie Meeks, Jerre Brumbelow, and other  Park Rangers.  (Jenkins deposition, page 33 and 36-37)   Subsequent to the transfer of a portion of his interest, construction of the addition began and the Park Service requested that Dr. Jenkins submit plans.  In accord with that request, Dr. Jenkins submitted a letter and plans for the addition on March 9, 2007 to the Park Superintendent (Document 5-10), who granted approval "in accordance with your retained rights" on May 23, 2007. (Document 5-12)  After the National Park Service rejected the Shepherd Center's proposals (Document 17), the interest in the property was reconveyed to the Defendants. (Document 18)

On August 2, 2007, John Fry, Acting Park Superintendent, sent a letter to Defendant Jenkins demanding that all construction cease effective immediately, not copying the Shepherd Center which was identified on the construction plans and whose representatives had engaged in conversations with Park Service personnel.  (Document

11

5-16)  After considering what he believed his interests allowed, Dr. Jenkins reconvened construction.  On May 8, 2008, Steve McCoy Acting Park Service Superintendent, advised Dr. Jenkins by letter without reciting any supporting authority of his contrary opinion, purported to prohibit completion of construction, and initiated criminal proceedings against Dr. Jenkins on June 30, 2008.  (Document 5-22)

By prohibiting the completion of the construction, Defendants contend that the government has unlawfully interfered with their full use and enjoyment of their property interests, which constitutes a trespass for which the government is liable for damages.

## Argument and Citation of Authority

### 1.  Summary Judgment

Plaintiff's Motion for Summary Judgment should be denied as it has not met the burden required for a grant of summary judgment.  Further, numerous issues of fact are in genuine dispute, thus requiring a jury trial.

In order to prevail at summary judgement, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. *Ellis v. England*, 432 F.3d 1321(11th Cir. 2005), *Turnes v. AmSouth Bank, N.A.*, 36 F.3d 1057, 1060(11th Cir. 1994), *Comer v. City of Palm Bay, Fla*., 265 F.3d 1186, 1192(11th Cir. 2001) quoting Fed.R.Civ.P. 56.

### 2. Estate for Years v. Usufruct

The primary provision for determining the interest in the parties is *O.C.G.A.*

§ 44-7-1(b) which provides: " All renting or leasing of real estate for a period of time in excess of five years is presumed to be an estate for years."  In the present matter, it is unquestioned that this estate was for forty years, both in conveyance to Schwartz and the conveyance that create the present interest of the Defendants under consideration.  The fact that an instrument contains language contradictory, i.e., an estate for years or a usufruct, is an issue that Georgia courts have previously construed.  In *Henderson, et al v. Tax Assessors, Camden County*, 156 Ga.App. 591, 275 S.E.2d 78(1980), the Georgia Court of Appeals had an opportunity to consider a somewhat similar question involving other property on Cumberland Island and found that the controlling provision of Georgia law, which concerned conveyances of a time period in excess of five years, compelled a finding that an estate for years was created rather than a usufruct.  The *Henderson* case involved later conveyances of estates on Cumberland Island after the Park was established.  These transactions also had characteristics that conflicted between an estate for years or a usufruct.  Even though those instruments imposed far greater limitations that are more consistent with a usufruct, i.e., permission required to cut a tree and express prohibition against materially altering existing structures, the approximate determination of the legal interest was that of an estate for years.

    In considering a similar matter, the Georgia Court of Appeals held "An estate for years carries with it the right to use the property in as absolute manner as may be done with a greater estate, provided that the property or the person who is entitled to the remainder or reversion interest is not injured by such use." *Jekyll Dev. Assocs.*

13

*L.P. v. Glynn County Bd. Of Tax Assessors*, 240 Ga.App. 273, 523 S.E.2d 370(1999) This provision guides the determination of what are the rights of the Defendants in the property in question, whether the interest conveyed was an estate for years or merely a usufruct. In making that determination the statutory provisions create a presumption that a period of time in excess of five years is an estate for years.

In these appellate decisions involving leases with conflicting provisions, an analysis must be undertaken to determine the estate created. If a lease has some provisions characteristic of a conveyance of an estate for years along with other indicative of a grant of mere usufruct, all provisions of the lease must be scrutinized objectively to determine whether the legal effect of the agreement is to grant an estate in the property or merely a right of use. *O.C.G.A.* § 44-6-103; *Jekyll, supra.*

Based on the foregoing analysis, Defendants contend that the appropriate conclusion is that the interest conveyed to the Defendants is an estate for years and their rights would only be limited by the express provisions.

**3. Restrictive Covenants**

The present action involves a determination as to how extensive is the restriction on the estate by the "single family residence" requirement as used in the conveyances and the effect of requiring construction of improvements within ten years from the date of the initial conveyance.

The Estate for Years deed provides:

> "The term "noncommercial residential purposes" shall be construed for the purposes of this agreement to permit a

14

> private single-family residence, with necessary support
> facilities; to be leased for not less than week to week
> tenancies."

It further provides:

> "This grant of an Estate for Years is contingent upon the
> Grantee commencing and completing construction of a
> single-family residential dwelling within ten (10) years
> from the date of this conveyance.  The right of
> construction is limited to a single-family residence."

Any doubts as to the scope of restrictive covenants will be construed in favor of the grantee, if the manifest intent of the parties can be ascertained from the covenant as a whole, no ambiguity exists and the rule of strict construction need not be applied.  *Boehm, et al v. Proctor, et al*, 415 S.E.2d 869, 202 Ga.App. 869(1992) Ambiguous terms of a contract are to be interpreted against the party which drafted them.  *C. A. May Marine Supply Co. v. Brunswick Corp.*, 557 F.2d 1163(5th Cir. 1977)  These principals weigh in favor of the Defendants.

In analyzing the scope of restriction required by a single family residence, the Supreme Court of Georgia in *City of Fayetteville v. Taylor*, 256 Ga. 698, 353 S.E.2d 28(1987) held that a building that was operated as a personal care home for thirteen residents unrelated to the owner of the building by blood or marriage, qualified as a "single family residence" under local zoning ordinances where the owner derived no compensation from services she provided to the residences, but only asked that residents contribute within their means to the monthly household expenses.

Plaintiff's argument fails to recognize that unless a restriction is clear in prohibiting an activity that the holder of an estate for years undertakes, the activity is

15

not prohibited. There is no showing that an addition to the house would damage the remainder. There was no initial limitation as to size of structure or design. There is no evidence that the addition could only be for a commercial use. An ambiguity exists in that the conveyance creating the estate for years permits weekly rentals to third parties even though this is a commercial use rather than residential. These provisions define a single-family residence contained in the conveyance only give guidance by defining a minimum lease period, which language is actually more consistent with a commercial rental operation. This language has broadened the ordinary definition of single family use. The Estate for Years does not address the issues of additions, remodeling, square footage, number of kitchens, number of bathrooms, number of bedrooms, and the right to approve plans - all of which are matters that could have been expressly limited had the parties chose to do so.

Based on the foregoing, any ambiguous terms of the instruments should be construed against the maker, the United States, and in favor of the grantee, the Defendants.

**4. Plaintiff's Actions Constitute Trespass**

The government improperly interfered with Defendants' full use and enjoyment of their private property by prohibiting the completion of the construction, which constitutes a trespass for which the government is liable for damages. While the leasehold interest limitations prohibited noncommercial use of the property, there were no prohibitions concerning additions to the residence. Their actions in limiting the Defendant's use of their estate because of the government's erroneous expansive

16

conclusion as to its own interest can establish a trespass.

While the Court has indicated that damages against the government cannot include an extension of the Defendants' estate for years as compensation for improperly limiting use during the limited time of the lease, that does not mean that the government's interference with the Defendants' property rights cannot constitute a trespass for which damages can be awarded.

Trespass is broadly defined under Georgia law: "The right of enjoyment of private property being an absolute right of every citizen, every act of another which unlawfully interferes with such enjoyment is a tort for which an action shall like." O.C.G.A. § 51-9-1(1982)  Any unlawful interference with property regardless of actual injury, is considered a trespass.  *Lugue v. Hercules, Inc*. 12 F.Supp. 1351(11th Cir. 1997) citing *Dowdell v. Cherry*, 209 Ga. 849, 76 S.E.2d 499(1953).

It is well established that no proof of actual injury to the land or a diminution in the property's value is required to maintain an action for trespass. *Lugue, supra*. citing *Marshall v. Georgia Power Co.*, 134 Ga.App. 479, 480, 214 S.E.2d 728, 730(1975); *Batson v. Higginbotham*, 7 Ga.App. 835, 838, 68 S.E. 455(1910).  Nominal damages can be awarded when the amount of actual injury is unclear.  *Lugue, supra*. citing *Morgan v. Black*, 86 Ga.App. 775, 777, 72 S.E.2d 558.

## Conclusion

Plaintiff's Motion for Summary Judgment should be denied as it has not met the burden required for grant of summary judgment.  Further, numerous issues of fact are in

17

genuine dispute, thus requiring a jury trial.

Respectfully submitted, this 23d day of November, 2009.

*John J. Ossick, Jr.*
John J. Ossick, Jr.
Georgia Bar Number 555150
John J. Ossick, Jr., P.C.
Post Office Box 1087
Kingsland, Georgia 31548
912-729-5864
Email: ossick@tds.net

18

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
|     Plaintiff ) | |
| ) | |
| v. ) | CASE NUMBER: 2:08CV149 |
| ) | |
| DR. BEN JENKINS and ) | |
| THE CHURCH OF VERITY, INC., ) | |
|     Defendants ) | |
| ) | |

**CERTIFICATE OF SERVICE**

This is to certify that I have this day served all parties in this case in accordance with the directives from the Court Notice of Electronic Filing ("NEF"), which was generated as a result of electronic filing.

This 23rd day of November, 2009.

                                          *John J. Ossick, Jr.*
                                          Georgia Bar Number 555150
                                          John J. Ossick, Jr., P.C.
                                          Post Office Box 1087
                                          Kingsland, Georgia 31548
                                          912-729-5864
                                          Email: ossick@tds.net